## Case No. 3,701.

### In re DEAN.

[3 N. B. R. 768 (Quarto, 18?).][1]

District Court, W. D. Texas. 1870.

BANKRUPTCY—EFFECT OF BANKRUPT'S DISCHARGE —POWERS OF REGISTER.

Where bankrupt had filed his petition in bankruptcy, and in due course obtained a final discharge, certain creditors subsequently filed petitions and insisted before the register that he should grant orders compelling the assignee to sell and convey certain property which had passed out of bankrupt's hands, and over which he had no control, to satisfy judgments which they had obtained against bankrupt, but which register refused to entertain. *Held*, the liens did not exist; but if they did, it was not competent for the creditors to enforce them after the bankrupt had been discharged. The register was right in his conclusions, and they are ratified and confirmed by the court.

[Cited in Re Jones, Case No. 7,449; Re Witkowski, Id. 17,920; Re Dole, Id. 3,964.]

[In bankruptcy. In the matter of Calloway Dean.]

DUVAL, District Judge. Dean filed his petition in bankruptcy on the 26th of December, 1868, and received a final discharge on the 28th day of January, 1870. It appears from the statement of facts and exhibits referred to in this case, that Mr. I. J. Roberts, a creditor of the bankrupt, recovered a judgment against him in the district court of San Augustine county, in the month of October, 1866, for one thousand and thirty-five dollars, and on the 22d day of October, 1869, he filed in the office of the register at Tyler, proof of debt as shown by said judgment, together with certificates of the proper officers, showing that the same had been recorded during the months of October and November, 1866, in the counties of Navarro, Limestone, Freestone, Houston, and Panola. Another creditor, Candy Raquet, recovered a judgment against the bankrupt in the district court of Smith county, on the 27th of November, 1868, for five hundred and forty-one dollars and twenty cents, and on the —— day of ——, 1869, made proof of this debt, with lien as thereby claimed, on about two thousand acres of land, situate in said county of Smith. It further

[1] [Reprinted by permission.]

appears that the bankrupt had become involved several years before his bankruptcy; that his wife had died in 1857; that he had subsequently sold, or otherwise disposed of, largely over his half of the community property, and that under these circumstances, and with a view to indemnify the children of his deceased wife (some of whom were minors) for their portion of the community property disposed of by him, he executed a conveyance to them, on the 10th of July, 1868, of all his lands, except five hundred and fifty acres in Harrison county, three hundred and twenty acres in Limestone county, and one hundred acres in San Augustine county, and of which lands one-half only were surrendered in bankruptcy. The deed of conveyance to his children was filed for record on the 8th of December, 1868.

On the 5th of October, 1868, an execution was issued on Roberts' judgment, which was levied on the 19th of November, 1868, on one thousand two hundred acres of land in Navarro county. The land was sold on the first Tuesday in February, 1869, and Roberts became the purchaser for sixty dollars. The creditors, Roberts and Raquet, filed their petition, and insisted before the register:

First. That he should grant an order compelling the assignee to convey the said one thousand two hundred acres of land to Roberts, by virtue of the judgment, levy, and sale, as aforesaid. This the register refused to do, because the said one thousand two hundred acres had been conveyed by the bankrupt to his children before the levy was made, and as the bankrupt was not then the owner, the levy created no lien. Further, because the sale was made after the filing of the bankrupt's petition, and was therefore void, unless ratified by the assignee, and proceeds paid over to him; and lastly, because it was not competent for the register to make such an order, when the land sought to be conveyed neither belonged to the bankrupt nor was surrendered in bankruptcy by him.

Second. That an order of sale should be made for the one hundred acres of land in San Augustine county, in satisfaction of the lien claimed to exist in favor of Roberts by the judgment rendered in that county in October, 1866. The register declined making the order on the ground that said judgment created no lien under the law; that from the 14th of February, 1860, to the 9th of November, 1866, a judgment in a court of record in Texas created no lien on real estate, unless the same was recorded in the clerk's office of the county court in the county where the land was situated, and that no such record appeared in this case.

Third. That an order should be made by the register to sell the five hundred and fifty acres in Harrison county, and the three hundred and twenty acres in Limestone county, to satisfy the lien created in favor of Roberts by recording his judgment therein, before the bankrupt filed his petition in bankruptcy.

This order the register declined granting in full, but directed the assignees to sell one undivided half of these two tracts of land, in satisfaction of said lien, one-half only of said land having been surrendered by the bankrupt, and the other half appearing to belong to other parties.

Fourth. That the register should order the assignee to sell the tract of about two thousand acres in Smith county in satisfaction of a lien claimed by virtue of the judgment rendered in that county in favor of Raquet, and should decree that the judgment was a lien on said land, notwithstanding the conveyance thereof by the bankrupt on the 10th of July, 1868. This the register declined doing, because the said land was not surrendered in bankruptcy, and because, at the date of said judgment the legal title was not in the bankrupt; and lastly, because the deed from the bankrupt to his children, although recorded after the rendition of judgment in favor of Raquet, at least passed the legal title of the land to them, and that therefore the judgment was no lien thereon.

Fifth. That the register should grant an order requiring bankrupt to appear and submit to an examination touching his acts and business, and to give complete statements about the lands rendered and sold, etc. This the register refused, because the bankrupt had been discharged and was then beyond his jurisdiction.

These were the main points or issues made before the register, and disposed of by him as stated above. No charge of fraud was made by the creditors against the conveyance by the bankrupt to his children of the 10th of July, 1868, nor any attempt to disturb the same, otherwise than by subjecting the lands to the liens supposed to exist by virtue of their judgments. 1 do not believe they existed as claimed; but if they did, it was not competent for the creditors, in such a proceeding as this, to enforce them after the bankrupt had been discharged, or to affect injuriously the rights or interests of the bankrupt's children, under the conveyance of lands made to them on the 10th July, 1868, without an or'ginal proceeding for that purpose, and making the children parties thereto. I think Mr. Register Whitmore is right in his conclusions, and hereby ratify and confirm, in all respects, his action in the premises. The clerk will so certify to the register.